CASES DECIDED IN ALL THE

# JUDICIAL DISTRICTS

OF

# PENNSYLVANIA

## VOL. VI.

---

## Dickinson's Estate.

*Testamentary trusts—Stock dividends—Principal and income.*

1. Where corporate stock is held in trust with the income payable to one for life with remainder over, and a stock dividend is declared during the operation of the trust, such stock dividend will be awarded to the life-tenant to the extent that the corporate books show that it represents earnings accumulated during the life tenancy, and the balance will become part of the *corpus* of the trust estate.

2. Where there are successive issues of new stock and the new stockholders pay for such new stock at par and a premium, the latter being carried on the books as contributed surplus, the new stockholders are not entitled to the premium or surplus as against the original stockholders, as such premiums or contributed surplus are merged into, and become a part of, the general assets of the corporation, and the income therefrom, as well as the income from the original stock and from the par of the new stock, forms a part of the corporate earnings. Hence, where such corporate earnings accumulated during the life tenancy amount to more than a stock dividend declared during such life tenancy, such stock dividend is income and belongs to the life-tenant.

Exceptions to adjudication. O. C. Phila. Co., April T., 1901, No. 202.

The facts appear from the following extract from the adjudication of Gest, J., Auditing Judge:

Mahlon H. Dickinson died on March 23, 1900, leaving a will, by which he bequeathed to the Real Estate Trust Company and George S. Dickinson $50,000 in trust, to invest the same and pay the net income to George S. Dickinson for his life, and after his decease (which event has occurred) to pay the income to his wife, Margaret Dickinson, for her life, and after the death of the survivor to pay and divide the said sum of $50,000 to and among the children of George S. Dickinson and Margaret Dickinson, who shall then be living, and the children of such as may be deceased, *per stirpes*, etc. And the testator directed that the said sum of $50,000 be paid to his trustees, either in cash or in such equivalent securities of his estate, at their market value, as his nephew, George S. Dickinson, shall select. He also directed that the investments of his estate might be continued by his executor and trustee, without liability for so doing by reason of the same not being what are ordinarily called strictly legal investments. He also gave his trustees power to make investments of the principal of the trust estates in securities similar to

Dickinson's Estate.

those he might leave, notwithstanding they may not be legal investments. By the adjudication of the executors' account and schedule of distribution annexed thereto there was awarded to the trustees for George S. Dickinson 120 shares of Fire Association stock, at $415 per share, making $49,800, together with $200 in cash. An examination of the record shows that the Fire Association stock of the testator, of which these shares formed a part, was appraised at $425 per share and then revalued for the purposes of the schedule at $415.

George S. Dickinson died on Oct. 4, 1907, leaving the Real Estate Trust Company as surviving trustee, which has filed this account in order that the rights of the succeeding life-tenant, Margaret Dickinson, and the rights of the remaindermen, respectively, may be determined with respect to a stock dividend of 120 shares of the Fire Association of Philadelphia, declared by said company as of Oct. 22, 1924, and received by the trustee on Nov. 3, 1924. Margaret Dickinson is living and has four children, Mahlon H. Dickinson, Charles S. Dickinson, Martha Dickinson and William W. Dickinson, entitled in remainder.

The will of the testator made similar bequests of $20,000 in trust for William H. Dickinson for life, etc., $10,000 in trust for Ida N. Manley for life, etc., $10,000 in trust for Sarah A. Jefferis for life, etc., and in the distribution of the estate certain other shares of Fire Association stock were allotted to these several trusts. Accounts have been filed by the surviving trustee in each of these estates and audited together with the present account. The same question arose in all of them, and the adjudication of these other trust accounts will refer to this as ruling the distributions therein made.

The facts as presented to the court were not disputed and will be stated in full, although some of them may, perhaps, be considered immaterial to the question involved.

In 1900 there were 10,000 shares of Fire Association stock, par value $50, the capital $500,000 and the surplus $926,049, aggregating $1,426,049, indicating a book value of $142.61. In 1906, owing to losses sustained in the San Francisco fire, the capital and surplus were reduced to $710,909, indicating a book value of $71.09. The capital was then increased by the issuance of 5000 shares of stock at $300 per share, $250,000 being placed to capital account and $1,250,000 to surplus account, the total capital and surplus being thus $2,210,909, indicating a book value of $147.40. In 1917 the capitalization thus stood at 15,000 shares, or $750,000, the earned surplus at $992,629, the additional paid-in surplus at $1,250,000, a total of $3,203,538, indicating a book value of $213.57. In that year the company issued 5000 more shares at $250 per share, $250,000 of the proceeds being placed to capital account and $1,000,000 to surplus account. The account shows that the trustees, having the right to subscribe to 40 shares of this new stock, sold the same, April 17, 1917, for $40, less commissions, or $1589.

On Jan. 1, 1924, the capital stock was 20,000 shares at $50, or $1,000,000, and the surplus was $5,086,318.41, a total of $6,086,318.41, of which the surplus, $2,250,000, represented cash paid into the surplus account, as the new issues of stock had been sold. This indicated a book value per share of $304.32. On Oct. 22, 1924, the stock dividend of 100 per cent. was declared, increasing the stock from 20,000 shares to 40,000 shares. At the same time, 20,000 new shares were issued and sold at $180 per share, $50 thereof going to capital, or $1,000,000, and $130 to surplus, or $2,600,000. This increased the number of shares from 20,000 to 60,000, increased the capitalization from $1,000,000 to $3,000,000, and increased the combined capital and surplus from

Dickinson's Estate.

$6,086,318.41 to $9,686,318.41, of which the aggregate amount added to surplus, by the sale of the several issues of stock over par value, is $4,850,000, the book value per share being $161.44. The account shows that the trustees, having the right to subscribe to 120 shares of the new stock, sold those rights for $40, less commissions, or $4718,75. The 120 shares received as stock dividend are debited in the principal account, but no value is carried out. It may be added that the stock (including the stock dividend and the rights to subscribe) sold at auction on Oct. 29, 1924, at $476, and it was stated that the present market value of the stock is $220.

In these circumstances, Mr. MacLaren, representing Margaret Dickinson, the life-tenant, and Messrs Craig and Moise, for the remaindermen, claimed that the life-tenant is entitled to 18.99 shares of the stock and that the *corpus* of the estate receives 101.01. Mr. Grubb, on the other hand, who represents William H. Dickinson, life-tenant, of a precisely similar trust of $20,000, contended that the life estate was entitled to the entire dividend.

The general principle applicable to this class of cases under the Pennsylvania decisions is stated in the brief of Messrs. Moise and Craig as follows: "Where corporate stock is held in trust with the income payable to one for life, with remainder over, and a stock dividend is declared, during the operation of the trust, such stock dividend will be awarded to the life-tenant to the extent that the corporate books show that it represents earnings accumulated during the life tenancy, and the balance will become part of the *corpus* of the trust estate."

The difficulty in the application of this rule to the present case arises from the addition to surplus, due to the payments into surplus account when the capital was increased in 1906, 1917 and 1924. The calculation, according to which 18.99 shares are to be awarded to the life-tenant and 101.01 to *corpus*, is this: From the total capitalization and surplus, after the declaration of the stock dividend, $9,686,318.41, should be deducted the capital, $3,000,000, the amounts paid into surplus, $4,850,000, and the surplus in 1900, the date of the inception of the life tenancy, which was $926,049, making a total of $8,776,049, leaving $910,269.41 as surplus earned during the trust. Then it is argued that the life-tenant is entitled to share, in the ratio that the surplus earned during the trust period, $910,269.41 bears to the unearned surplus, $4,850,000. This theory does not appear to me to be correct, and I know of no decision which sustains it. It seems to me that the stock dividend was declared and paid for entirely out of the earnings made by the company during the life tenancy. The question should not be considered as complicated by the fact that, contemporaneously with the declaration of the dividend, the surplus was increased by the addition of $2,600,000. The calculation seems a simpler one. The capital and surplus before the declaration of the stock dividend in question was $6,086,318.41, or, deducting the capital, the surplus was $5,086,318.41. Of this, $2,250,000 was paid in as surplus and does not represent earnings. Deducting this, there is left, as earned surplus applicable to dividends, $2,836,318.41. The earned surplus at the beginning of the life tenancy was $926,049, and, deducting this, leaves $1,910,269.41; and as this is greater than the stock dividend of $1,000,000, it appears that the stock dividend was paid for entirely out of earnings accumulated since the death of the testator. In view, however, of some of the cases referred to on this subject, I shall refer to some of them.

The book value of the 120 shares in 1900 was, as stated, $142.61 per share. The book value of 120 shares in 1924 was, as stated, $304.32, or, after the dividend was declared and the stock increased, $161.44, showing that the

*Dickinson's Estate.*

book value of the original 120 shares has increased, so that the life-tenant may be awarded the stock dividend without any impairment of the original value, thus complying with the rule in Stokes's Estate (No. 1), 240 Pa. 277. And, in addition thereto, it should be noted that the principal of the trust estate has been increased by the sale of the rights to subscribe to new stock in 1917 and 1924, amounting in all to the rights to subscribe to 160 shares at $40, or $6400, less commissions, which, of course, belongs to principal under Eisner's Appeal, 175 Pa. 143; Veech's Estate, 74 Pa. Superior Ct. 373, and Corr's Estate, 29 Dist. R. 281.

The other case which should be noted is Willcox's Estate, 25 Dist. R. 410, 66 Pa. Superior Ct. 182, where the stock of the corporation was increased by the issuance of new stock, in part to employees at par, and in part to the stockholders and others at a price above par, and the remainder of the new issue was distributed to the stockholders as a stock dividend at par, and paid for out of surplus accumulated profits. The facts were complicated, but I cannot see that the decision affects the present case. It appears from the report that the 416 shares of stock originally held had a book value when the testator died of $75.25 per share, a total of $31,204. After the transaction was completed, the book value was reduced to $65.75, thus impairing the value of the principal of the trust fund, and accordingly the court prorated the stock dividend between principal and income. But in the present case the book value of Fire Association stock in 1900 was $142.61, and after the increase of stock and the declaration of the stock dividend in 1923, it was $161.44, so that it seems clear enough that there was no impairment, as I have previously stated. See Sloan's Estate, 258 Pa. 368.

I think the costs of filing the account and counsel fee should be charged to income account and not to principal, and the balances will be adjusted accordingly.

The balance of principal, composed as stated, is $56,018.75; add costs and counsel fee deducted, $350.50, making $56,369.25, which (deducting therefrom the 120 shares of Fire Association stock, being the stock dividend in question and included in the balance with no valuation) is awarded to the accountant in trust for Margaret Dickinson.

The income account shows that the income has been distributed to Margaret Dickinson, life-tenant.

There is now awarded to Margaret Dickinson, the life-tenant, the 120 shares of stock of the Fire Association, less $350.50, costs and counsel fee.

*Arthur E. Weil, Albert L. Moise, Henry A. Craig* and *Francis R. Matlack,* for exceptants.

*Joseph H. Grubb, Jr.,* and *F. C. Newbourg, Jr.,* contra.

THOMPSON, J., March 23, 1925.—At the time of testator's death, the value of his stock in the corporation in question was $142.61 a share, the assets consisting of the original capital and undistributed earnings.

The adjudication clearly sets forth the financial history of the corporation since. There were successive issues of new stock, and the new stockholders paid not only the par value, but a premium—the latter being carried on the books as contributed surplus. However, the new stockholders were not entitled to the benefit of that premium or surplus, exclusive of or as against the original stockholders. These premiums or contributed surplus merged in and became part of the general assets of the corporation; and all stockholders, new and old, had an interest therein in proportion to their holdings. The income therefrom, as well as the income from the original stock and from the

par of new stock and whatever surplus there was at the time the new stock was issued, went into the treasury of the corporation as earnings. These earnings, at the time of the declaration of the stock dividend in question, amounted to $1,910,269.41, of which $1,000,000 only was distributed as a stock dividend. Had the dividend been in cash, no question as to the right of the life-tenant to take it could arise; for there still remained in the hands of the corporation the whole capital, the surplus accumulated during testator's lifetime, the premium or cash contributed as surplus, and some undistributed income.

The distribution of the surplus earnings being, however, in the form of new stock, the holders of which, upon its issue, becoming at once entitled to their proportionate share of the remaining assets of the corporation, it became necessary to ascertain by the best method available what was the actual value of each share of stock as increased. This was done by ascertaining its book value, and thus found by the Auditing Judge as $161.44, which is in excess of the value at the time of testator's death. As it clearly appears that the par value, not only of the stock in existence at testator's death, but the par value of the successive increases and as increased by the stock dividend, the surplus at the time of testator's death, and the contributed surplus, remain unimpaired, and there are surplus earnings besides, it is impossible to see how the Auditing Judge could have done anything else than award the entire stock dividend to the life-tenant.

The exceptions filed as to commissions are sustained, a stipulation respecting same having been filed. The other exceptions are dismissed and the adjudication confirmed.

LAMORELLE, P. J., did not sit.

VAN DUSEN, J., did not take part in the decision, as he was interested in the questions involved.